OPINION OF THE COURT
Denis R. Hurley, J.
By petition filed June 15, 1982, pursuant to Social Services Law § 384-b, the petitioner Suffolk County Department of Social Services seeks an order granting them the guardianship and custody of Anna Vunk (date of birth June 15, 1971) upon the ground of abandonment by her natural father Stephen Orin Vunk. The petition alleges, inter alla, that the child’s natural mother placed the child in foster care by signing a voluntary transfer of custody on March 26, 1979, and that she thereafter signed a surrender of child for adoption on February 17, 1982. The petition further alleges that the respondent father failed to *829 visit, communicate or support the child for a seven-month period immediately prior to the filing of the petition on June 15,1982.
The respondent denied that he had abandoned his child within the meaning of the relevant section of the Social Services Law, and consequently a protracted hearing was held which was finally concluded on December 6, 1984.
PACTS
The respondent and Georgiana Preda were married in October 1968, with Anna being born of that union on June 15,1971. The parents and child resided together until 1979, when Mr. Vunk was sentenced to a prison term of 0 to 4 years following his conviction for sodomy. While Mr. Vunk was in jail, his wife commenced divorce proceedings. It was also during the time of Mr. Vunk’s incarceration that Anna’s mother placed the child in foster care.
Mr. Vunk was released from Attica State Prison on November 11, 1981. During his incarceration, he maintained relatively constant contact with his daughter. He wrote to her approximately once a month and sent her many gifts, all in care of the Department of Social Services since he did not have Anna’s address at the foster home where she was residing. Among the gifts was a bicycle and a phonograph. Anna wrote him two letters during that time, and in one of the letters she enclosed a picture of her riding the bicycle that he had given to her.
Following the respondent’s release from jail on November 11, 1981, he called the Department of Social Services on November 14 or 15 and asked to speak with the caseworker assigned to Anna’s case, Marjorie Storiano. He was advised that she was on jury duty and would not be available until January. Upon receiving that information, he left his telephone number and asked that he be called by someone familiar with his daughter’s case. No return call was received by Mr. Vunk, but it should be noted that he only remained at that location for a period of two days.
Mr. Vunk sent Anna a Thanksgiving card and a Christmas card, care of the Department of Social Services, in 1981. But for these two cards, and the aforementioned mid-November telephone call to the Department of Social Services, it is clear that Mr. Vunk made no effort to contact his daughter in the interim between his release from jail on November 11, 1981, and the filing of the abandonment petition on June 15, 1982. The only contact within the alleged abandonment period was the 1981 Christmas card which the Department does not acknowledge receiving, but I believe the respondent sent.
*830 Mr. Vunk endeavored to explain the absence of contact. He testified that in May 1982, he asked his parole officer in Manhattan for permission to travel to Suffolk County to see his daughter, and that his request was denied. He further testified that his parole officer suggested at that time that he telephone the Department of Social Services. This he declined to do “because [he] had decided to leave Manhattan”. He did leave Manhattan a few weeks thereafter to join Reverend Mackey at the Temple of the Good Shepherd in Queens. By so doing, he violated a territorial condition of his parole.
The court rejects the claimed nexus between Mr. Vunk’s parole problems and his failure to contact his daughter. Nothing prevented Mr. Vunk from, inter alla, either writing to Anna or telephoning the Department for an update concerning the youngster during the period in question.
In addition to the proffered excuse predicated on his parole problems, the respondent claimed, almost as an afterthought, that he was unaware that Anna was in foster care for much of the alleged abandonment period. He testified that Anna’s mother asked for her custody in the divorce action which was finally concluded in December 1981. Based on that request, he said that he assumed that the child was returned to her mother at same unspecified point. Supposedly he did not discover the continuation of Anna’s foster care status until April of 1982, when he received a letter from the Department of Social Services. The court disbelieves this testimony of the respondent concerning his understanding of Anna’s status in early 1982 for a number of reasons, including the fact that by his own admission he made no efforts after his receipt of the April letter to contact the child until after the petition was filed. Again, no phone calls were made or letters sent.
The above constitutes my findings of fact. Let us now consider the applicable law.
APPLICABLE LAW
The Department of Social Services is seeking the guardianship and custody of Anna, claiming that the father’s lack of the contact with the child, for the six months immediately prior to the filing of the petition, constitutes “abandonment” within the purview of Social Services Law § 384-b (5).
The statutory scheme embodied in section 384-b (5) was recently synopsized by the Court of Appeals in Matter of Julius P. (63 NY2d 477, 481) thusly: “The Social Services Law provides that a child is abandoned if the parent evinces an intent to *831 forego her parental rights and obligations. Intent is manifested by the parents’ failure to visit the child or communicate with the child or the agency although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, the ability to visit or communicate is presumed * * * The statute makes clear that the burden rests on the parent to maintain contact and that subjective good faith will not prevent a finding of abandonment”. (Emphasis supplied.)
The burden of establishing abandonment rests with the petitioner, which must establish its claim by clear and convincing evidence. (Social Services Law § 384-b [3] [g]; Santosky v Kramer, 455 US 745.)
Before discussing whether Mr. Vunk abandoned Anna, the jurisdictional issue raised by the respondent must be resolved. Respondent maintains that the petitioner commenced the proceeding prematurely, i.e., before a cause of action existed. Should the court accept this argument, obviously the petitioner’s entire case must fall. Therefore, this threshold issue shall be addressed initially.
QUESTIONS PRESENTED
The legal issues, as developed during the course of the trial, are as follows:
1. Must the petition be dismissed upon the ground that it was filed before the statutory six-month period had fully run its course, i.e., before a cause of action for abandonment had accrued?
2. Assuming, arguendo, that the petition was not prematurely filed and, therefore, does state the cause of action:
(a) did the respondent father fail to contact his daughter for at least the six-month period immediately prior to the filing of the petition for abandonment?
(b) was the lack of contact accompanied by the requisite intent to forego his parental rights and obligations?
The above questions will be considered seriatim.
PETITION WAS NOT PREMATURELY FILED
The present petition was filed at 9:40 a.m. on June 15, 1982. It does not contain a date when contact allegedly ceased. Rather it simply refers to a commencement date seven months prior to the petition’s filing. The pleading, therefore, does properly state an abandonment cause of action. Moreover the proof adduced at the hearing does not warrant a dismissal of the petition on the proffered ground that it was filed before the six-month abandonment period had expired.
*832 It is uncontroverted that the respondent made no effort to contact his daughter for a period which exceeded the statutory minimum of six months by a number of days. Therefore, the respondent’s argument that the petitioner “jumped the gun” by filing the petition at 9:40 a.m. on June 15, instead of waiting until, the end of the day, is without merit. The remainder of that day was not needed by the petitioner to satisfy the six-month prerequisite.
Parenthetically, the parties framed the time problem differently than the court. Counsel argued that the statutory period extended from December 15, 1981, to June 15, 1982, even though neither the pleading nor proof so circumscribed the period. Of course, the court is not required to accept counsels’ arguments as to what the proof establishes, and, in this case, I have not. As explained previously, I have measured the six-month period retroactively from 9:40 a.m. on June 15. Consequently, whether the petition would have been filed prematurely if, arguendo, the relevant time frame was December 15, 1981, to June 15,1982 — thereby making June 15 the “last day” — is technically a moot question. Nonetheless the parties have devoted considerable attention to this threshold issue, and it is an important issue which I feel compelled to address. As far as I have been able to determine, there is no reported authority in this State which explains the relationship between the time of day that an abandonment petition is filed on the final day, and the legitimacy of the claimed cause of action.
Petitioner maintains that whether a petition is filed in the morning, afternoon or evening of the last day is irrelevant. I believe that position is erroneous. A respondent faced with the prospects of a permanent severance of his parental rights is certainly entitled to the full last day. The statute reads “six months”, not “six months less a few hours”. On the last day, a respondent, such as Mr. Vunk, could contact the agency. Even if he doesn’t, as Mr. Vunk did not, that would not convert a premature filing into a viable cause of action. The filing of the petition stops the clock. If it stops short of the full six months, the abandonment petition must be dismissed. (Cf. Fisk Discount Corp. v Brooklyn Taxicab Transp. Co., 270 App Div 491, 500 [2d Dept 1946] [“Ordinarily the law does not concern itself with fractions of days, as in cases where an act is to be performed ‘within’ or in ‘not less than’ a specified period of time. In such cases performance at any hour during the last day is sufficient. But where the act is not to take place until ‘after’ a specified time or event, then every fraction of the days within the specified period becomes material; and the entire period must elapse *833 before the next act may be performed”]; see generally, 59 NY Jur, Time, § 12, at 86 [“Where a statute provides that a thing may be done only after the expiration of a time named, that time must fully expire. When an act is not to take place until after a specified time or event (such as, in the present, the filing of an abandonment petition until after six months sans contact), then every fraction of the day within the specified period becomes material, and the entire day must elapse before the next act may be performed”].)
In sum, the relevant period for determining whether Mr. Vunk abandoned his daughter is the six months immediately preceding 9:40 a.m. on June 15,1982. The pleading alleges, and the proof establishes a lack of contact for that period, plus an additional few days. Consequently, June 15 was not the “last day”. Therefore, its full passage was not required for the petitioner to satisfy the six-month condition precedent to the commencement of the present proceeding.
The petition was not prematurely filed.
THE RESPONDENT EVINCED AN INTENT TO FOREGO HIS PARENTAL RIGHTS AND RESPONSIBILITIES,
AS MANIFESTED BY HIS FAILURE TO MAINTAIN CONTACT WITH HIS CHILD FOLLOWING HIS RELEASE FROM JAIL
The respondent had continual contact with his daughter during his incarceration. However that manifestation of concern ended shortly after his release, and extended for a period in excess of the six months before the initiation of the present abandonment proceeding.
The mere absence of contact for the statutory period, of course, does not necessarily constitute abandonment. (Matter of Michael J. A., NYLJ, Jan. 18, 1984, p 13, col 5 [Sur Ct, Nassau County].) However, an absence of contact — unexplained — may be a sufficient predicate for an abandonment finding. Why? Because section 384-b (5) (a) provides that a parent’s intent is inferred from his conduct. (Matter of Julius P., supra.) The applicable law is well summarized in the following excerpt from Matter of Ulysses T. (87 AD2d 998, 999 [4th Dept 1982]), which case was cited with approval by the Court of Appeals in Matter of Julius P. (supra). “[I]f a parent manifests an intent to forego his parental rights and obligations by failing to visit or communicate with the child or agency having custody of the child for six months, he is deemed to have abandoned the child * * * In short, evidence of parental disinterest for six months requires the *834 parent to satisfy the court that he did not intend to abandon the child * * * It may be that respondent could not maintain contact here or that his failure to do so is excusable. The statute presumes otherwise, however, and the burden should properly be placed upon him to come forward with evidence to avoid an adverse finding”.
Against the above standard, let us consider the conduct of Mr. Vunk. He did essentially nothing vis-á-vis his daughter during the claimed abandonment period. He didn’t write, or telephone, nor did he furnish the agency with an address or telephone where he could be reached.
Attention is now directed to the respondent’s explanation for his failure to communicate with Anna. The reasons urged (viz., parole problems and a misunderstanding of the child’s status in early 1982), if believed, would require the dismissal of the petition. However the court, as the trier of fact, disbelieves the respondent as to each of the two excuses offered. As a result, I find that the petitioner has established by clear and convincing evidence that the respondent has abandoned his child within the meaning of the controlling statute.