■ In the Matter of O. CHILDREN. ST. DOMINIC'S HOME, Appellant, v DORIS O. et al., Respondents.—Order, Family Court, Bronx County (Irene J. Duffy, J.), entered May 30, 1985, which dismissed petitions of Saint Dominic's Home brought pursuant to Social Services Law § 384-b (4) (d), and Family Court Act article 6, on behalf of five children, to terminate the parental rights of the mother of all five children and the father of two of the children, on the grounds of permanent neglect, unanimously reversed, on the law and the facts, the petitions granted, and the matters remanded for a dispositional hearing without costs.

Five children are involved in these proceedings. The children and their dates of birth are: Jacqueline—December 13, 1972; Angelo—June 5, 1975; Delilah—October 10, 1976; Elizabeth—April 12, 1980; Doris—March 14, 1981. The respondent father is the father of Elizabeth and Doris. The father of Jacqueline, Angelo and Delilah is deceased.

The petitions allege that the mother in all five cases and the father in the two cases applicable to him have failed (1) to take necessary steps to plan for the children, (2) to keep in substantial contact with the children, (3) to establish proper and adequate accommodations and (4) to utilize agency services and recommendations. The petitions also allege that despite diligent efforts on the part of the agency to encourage and strengthen the parental relationship, the respondents have failed for a period of more than one year following the placement of the children in foster care to substantially and continuously or repeatedly plan for their future, although financially able to do so.

In her original decision of May 30, 1985, the Family Court Judge noted that "the Agency's efforts to maintain visitation and to obtain housing and welfare as well as the parents failure to cooperate in these areas continued for over the one year period." She further noted that "this case involves clear parental failure. Both parents have failed to play an active role in formulating plans for the return of their children. Indeed they have failed for the most part to demonstrate, on a consistent basis, a strong interest in or concern for these children." The record supports these findings of the Family Court.

Over a period of two years, both parents repeatedly failed to keep visitation dates with their children, often without notice and without explanation. This conduct could not but have a devastating effect upon them. Neither parent attempted to plan for the return of the children nor did they attempt to follow the plan of the agency. They often did not appear for appointments to aid them with housing, welfare or parenting skills.

A social worker for the petitioner testified about the efforts to get the parents to keep in contact with and plan for the future of their children. The agency's plan included the establishment of a stable residence for the children, public assistance, visiting and counseling. Efforts to assist the parents in these areas were frustrated by the parents' repeated failure to keep appointments. Between January 1983 and December

1983 the parents kept about one third of approximately 28 appointments to see their children. Often no calls or excuses were made. When the mother did call, her excuses included illness, the fact that it was raining, a doctor's appointment, and an arrest for failing to pay a fare on the subway. On one occasion, the mother canceled because only three of the five children were being produced. On two other occasions the children were brought to the home of an aunt and the mother failed to appear. On one of these latter occasions, she complained to the agency that the children and their escort should have waited for her.

The father never gave an address to the agency and could only be contacted through the mother.

The placement of these five children in foster care prior to bringing the proceeding for termination was not the first experience of either the mother or the father with foster care. Between 1977 and 1982, three child protective proceedings were brought against the mother and two against the father. On August 5, 1977 a petition in the Kings County Family Court alleged that the mother had failed to properly clothe or adequately supervise three children ranging in age from 10 months to 4 years. (Jacqueline, Angelo, Delilah.) On December 6, 1977 a finding of improper supervision was entered against the mother, and the children were placed in foster care where they remained for almost 2½ years. A second petition was filed against the mother and father on July 7, 1981 in the Kings County Family Court alleging that they had failed to provide seven children with adequate food or shelter or to supervise them. (Jose, Jacqueline, Angelo, Delilah, Elizabeth, Doris, Henry.) There was also an allegation that the father had beaten his child, Henry. On October 26, 1981, these petitions were withdrawn, except that a finding of excessive corporal punishment was made against the father and Henry was placed in foster care.

On April 30, 1982, a third petition was filed in the Kings County Family Court after the five children, the subjects of these proceedings, were found by the police alone and unsupervised in an apartment with no lights, food, locks, adequate furniture, plumbing or windows. On December 8, 1982, the court found that the respondents had neglected the five children and placed them in foster care where they have remained. At the same time, the Family Court found that the respondents had neglected three other children—Jose (born on Aug. 12, 1966), Felix (born on July 29, 1967), and Eladio (born

on Aug. 19, 1968). An allegation of sexual abuse of Jacqueline by the father against Jacqueline was withdrawn.

The mother gave birth to another child, Gregorio, on February 29, 1984. He was suffering from drug withdrawal symptoms. A petition of neglect against the mother was withdrawn after she voluntarily placed him in foster care.

Despite this record of disinterest and unconcern, the Family Court Judge denied the petitions for the termination of parental rights because she felt that the agency had not sufficiently urged psychological testing upon the parents. The mother of the children had been in a methadone program for some 12 years and had required increased doses of methadone over that period. The Family Court attributed the mother's failure to plan for the children in large part to her methadone addiction. Accordingly, the agency had her evaluated by a psychiatrist. As a follow up to the psychiatric visit, the mother was referred for psychological testing. The mother refused to appear for such testing during a four-week period in January and February 1983. She is further reported to have said that she would not undergo the testing because she was not crazy. After the four-week period in 1983, the agency's efforts to have the mother undergo psychological testing ceased.

The Family Court's conclusion that the father should undergo psychological evaluation and testing was based upon an allegation of sexual abuse by the father against one of his stepdaughters, Jacqueline, which was made in 1982, and the father's indifferent attitude toward his children on the limited occasions on which he did visit them. This allegation was withdrawn.

In denying the petitions to terminate parental rights due to the failure of the agency to provide psychological evaluation and testing, the Family Court erred. On this record, the agency made diligent efforts to strengthen the parental relationship and the absence of psychological testing does not change that fact.

In determining that the agency had not made diligent efforts to have the parents psychologically tested, the Family Court concluded that diligent efforts had to be made in each of the areas listed in Social Services Law § 384-b (7) (f). That section reads as follows:

"As used in this subdivision, 'diligent efforts' shall mean reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child, including but not limited to:

"(1) consultation and cooperation with the parents in developing a plan for appropriate services to the child and his family;

"(2) making suitable arrangements for the parents to visit the child;

"(3) provision of services and other assistance to the parents so that problems preventing the discharge of the child from care may be resolved or ameliorated; and

"(4) informing the parents at appropriate intervals of the child's progress, development and health."

While there is an obligation on the part of the agency to make diligent efforts in each of the areas quoted, any efforts are subject to the rule of reason. In *Matter of Sheila G.* (61 NY2d 368) the Court of Appeals recognized that some agency efforts would end in failure because of parents themselves. It stated:

"An agency must always determine the particular problems facing a parent with respect to the return of his or her child and make affirmative, repeated, and meaningful efforts to assist the parent in overcoming these handicaps. In evaluating the over-all efforts undertaken by the agency, the courts should always refer to the statutory guidelines.

"Of course, the agency is not charged with a guarantee that the parent succeed in overcoming his or her predicaments. Indeed, an agency that has embarked on a diligent course but faces an utterly un-co-operative or indifferent parent should nevertheless be deemed to have fulfilled its duty. The statute itself speaks of 'reasonable attempts' to foster the parent-child relationship, and a diligent undertaking will serve to fulfill this requirement [citations omitted]." (61 NY2d, *supra,* at 385). While the agency could have continued efforts to schedule appointments for psychological testing, on this record it was not required to do so.

In a decision dated September 24, 1985, the Family Court Judge denied petitioner's motion to reargue. The two points raised in the motion were that the parents had failed to maintain contact with the children and that the father had never given the agency an address where he could be reached, a reason for terminating his parental rights without the necessity of the agency making diligent efforts to strengthen the parental ties. The court rejected both contentions.

Contrary to the court's September 24 decision, however, it is clear that the issue of maintaining contact with the children was raised in the petitions to terminate parental rights.

Equally clear is that the Family Court erred in its conclusion in the September 24 decision that there had been sufficient visits by the parents to reject any claim of a failure to maintain contact. In its May 30, 1985 decision, the court itself had found a failure of the parents to cooperate with visitation. The failure to maintain consistent contact, when added to the failure to plan, are ample grounds for terminating parental rights.

We also disagree with the Family Court's rejection of the agency's argument that it did not have to make diligent efforts on behalf of the father because of his repeated failure to inform the agency of his location. While the respondents were apparently staying together at times during the months preceding this proceeding, respondent father never informed the agency of where he could be reached. Since an agency does not have to make diligent efforts to strengthen a parental relationship when there is a failure to keep the agency apprised of a location for a period of six months (see, Social Services Law § 384-b [7] [e]), the agency's efforts on behalf of the father were unnecessary. Nevertheless, the agency did make diligent efforts on behalf of the father, efforts which failed because of the father's lack of interest.

In summary the record provides adequate grounds for terminating parental rights. Both parents failed, despite diligent efforts by the agency to take necessary steps to plan for the children, to keep substantial contact with the children, to establish proper and adequate accommodations, and to utilize agency services and recommendations. In addition, the father failed to keep the agency informed of his whereabouts for over six months, an independent ground for terminating his rights. Concur—Sullivan, J. P., Carro, Milonas, Ellerin and Smith, JJ.