■ In the Matter of DENAYSIA SHANTEL C., a Child Alleged to be Permanently Neglected. ST. CHRISTOPHER-OTTILIE, Appellant; TEMEKIA C., Respondent. [698 NYS2d 664] —Order, Family Court, New York County (Susan Larabee, J.), entered on or about August 31, 1998, which dismissed the petition seeking termination of respondent-natural mother's parental rights on the ground of permanent neglect, unanimously reversed, on the law and the facts, without costs, the petition reinstated

and a finding of neglect entered against respondent, and the matter remanded for a dispositional hearing.

Denaysia Shantel C. was born to respondent-mother on March 11, 1993, and was placed right after birth with the petitioner-agency by the Commissioner of Social Services. On December 11, 1997, the agency filed a petition to terminate respondent's parental rights based upon permanent neglect pursuant to Social Services Law § 384-b (7). The petition alleged, *inter alia*, that respondent failed, for a period of approximately 18 months, to substantially and continuously maintain contact with or plan for the future of her child, and failed to keep petitioner apprised of her whereabouts during such period.

Following a fact-finding hearing, Family Court dismissed the petition. In doing so, the court concluded that respondent's whereabouts were known since petitioner had frequent, continuing contact with respondent. The court further concluded that petitioner failed to demonstrate that it made diligent efforts to encourage and strengthen the parental relationship. We disagree.

Initially, although a petitioner is ordinarily obligated to show that it made diligent efforts to encourage and strengthen the parental relationship, such efforts need not be demonstrated where the parent has failed for a period of six months to keep the agency apprised of his or her location (*see*, Social Services Law § 384-b [7] [a], [e]). Here, petitioner repeatedly requested respondent's address throughout the 18-month period at issue. Respondent refused, however, to provide an address because, as she explained, she stayed with different friends. To the extent that petitioner did have contact with respondent, it was largely a result of happenstance, as, on a few occasions, when the caseworker would visit the foster home and find respondent there. In view of this, petitioner was not required to demonstrate diligent efforts to strengthen the parental relationship (*Matter of Gyvon Lamar P.*, 190 AD2d 592, *lv denied* 82 NY2d 654; *Matter of O. Children*, 128 AD2d 460).

In any event, the proof at the hearing demonstrated diligent efforts on the part of petitioner to the extent possible under the circumstances. Thus, petitioner, among other things, attempted to maintain contact with respondent, arranged for her receipt of public assistance, and encouraged her to maintain contact with her child. Petitioner's efforts, however, were largely thwarted by respondent's refusal to provide an address where she could be contacted.

Finally, notwithstanding that respondent appears to have

maintained some contact with her child, petitioner's proof established that respondent failed to "substantially and continuously * * * plan for the future of [her] child" (Social Services Law § 384-b [7] [a]). In this regard, respondent had not secured permanent housing, did not have employment, missed scheduled agency visits and home visits, rarely contacted the agency, refused to disclose her whereabouts to the agency, refused to allow the agency access to a Manhattan apartment (an address that she ultimately disclosed), removed the child from the foster home without permission, and remained generally uncooperative with the petitioner. Accordingly, the evidence supports a finding of respondent's neglect of her child (*see, Matter of M.E.*, 174 AD2d 434). Concur—Ellerin, P. J., Williams, Wallach, Buckley and Friedman, JJ.