■ In the Matter of KALEEMAH SHALEAH M. and Another, Children Alleged to be Permanently Neglected. MELVIN W., Respondent; NEW YORK FOUNDLING HOSPITAL et al., Appellant. [775 NYS2d 252]—

Order, Family Court, Bronx County (Clark Richardson, J.), entered on or about January 13, 2003, which, after a fact-finding hearing, denied and dismissed the petitions of New York Found-

ling Hospital to terminate the parental rights of the respondent father to the two subject children upon the ground of permanent neglect, unanimously reversed, on the law, without costs or disbursements, the petitions reinstated, a finding of permanent neglect made thereupon and the matter remanded for a dispositional hearing.

In July 1997, the subject children, respondent father's two daughters, Kaleemah, then almost two, and Nefertiti, a four-day-old infant, entered foster care due to their mother's drug abuse. Between that time and January 1999, the agency put in place the following plan for respondent, so that the subject children, with whom he had never lived, could be discharged to his care: completion of a parenting skills program, acquisition of suitable housing and regular visitation with the two children. In January 1999, however, the plan changed due to allegations that respondent had sexually abused the girls' teenaged half-sister, Taquana, who was not related to respondent. At that point, the agency added another requirement to the plan: the completion of a sex offender program. Thereafter, Family Court made a finding of abuse against respondent as to Taquana.

As the evidence shows, for a period of 17 months prior to the filing of the instant petitions—from November 1999 until April 2001—the agency ensured that respondent was enrolled in a sex offender program and attempted to monitor his progress by counseling him and urging him to sign a consent form so that the agency could obtain information from the program about his progress. The uncontroverted evidence shows that in November 1999, an agency caseworker referred respondent to a sex offender program at the New York State Psychiatric Institute's Sexual Behavior Clinic in Brooklyn. Respondent failed to investigate the program, presumably because it was too expensive. He then, on his own, enrolled at Metropolitan Center Sex Offenders Program, which he attended weekly from January 26, 2000 through September 13, 2000, missing five sessions. During this period, the caseworker urged the respondent to continue his participation in the program and attempted to have him sign a consent form so that the agency could obtain information from Metropolitan as to his progress. Although he agreed to sign such a consent, respondent never did so. At one point, respondent told the caseworker that he was not "getting anything out of the [Metropolitan] program" because "all they do is sit and talk . . . about the abuse, what they do, what they did, why they did that." Sometime later, he told the caseworker that the program was not positive and involved group sessions with people who did things much worse than he did. As he

stated, the only thing he did was "sodomize"* Taquana six or seven times. It is undisputed that respondent never completed the Metropolitan program.

At the agency's urging, respondent reenrolled in the Metropolitan program in February 2001. Two months later, however, the caseworker·was advised that respondent had been terminated from the program due to "lack of participation/attendance." Respondent asserted that he was terminated because he could no longer pay the fee of $50 per session. On numerous occasions, the caseworker advised respondent that completion of a sex offender program was a major part of the plan to return the children to him. She explained to him the consequences of not completing the program and advised him that if he failed to do so the agency was going to file a petition to terminate his parental rights. The caseworker referred respondent to a different sex offender program in Brooklyn known as Mustard Seed. He never enrolled.

Finding that respondent had realized three of the four goals of the service plan, i.e., completion of a parenting skills class, the acquisition of suitable housing and regular visitation with the children, Family Court found that the agency failed to exercise diligent efforts to have respondent complete a sex offender program and dismissed the petitions. We reverse.

As this record shows, the agency established, by clear and convincing evidence, that respondent, despite the diligent efforts of the agency, permanently neglected his two daughters by failing to complete a sex offender program—a prerequisite to having the children, then ages six and four, discharged to his care. Whether the agency has exerted diligent efforts to satisfy its statutory obligation (Social Services Law § 384-b [7] [f]) remains subject to the "rule of reason" (*Matter of O. Children*, 128 AD2d 460, 464 [1987]; *Matter of William J.*, 228 AD2d 315 [1996]). The agency "is not charged with a guarantee that the parent succeed in overcoming his or her predicaments. Indeed, an agency that has embarked on a diligent course but faces an utterly un-co-operative or indifferent parent should nevertheless be deemed to have fulfilled its duty" (*Matter of Sheila G.*, 61 NY2d 368, 385 [1984]). We should not close our eyes to the real problem here, respondent's inability to acknowledge his sexual abuse of his daughters' older half-sister. That respondent would not accept his wrongdoing was not the fault of the agency, which was relentless in its efforts in that regard. Until he could do so, no amount of effort could bring respondent to the point

---

* While respondent used the term "sodomize" to describe the abuse, the record otherwise suggests that the abuse consisted of inappropriate fondling.

where he could accept guidance and counseling for his problem. A finding of permanent neglect should be made and the matter remanded for a dispositional hearing. Concur—Tom, J.P., Andrias, Saxe and Sullivan, JJ.