OPINION OF THE COURT
Bruce M. Kaplan, J.
These consolidated proceedings require the court to determine: (1) whether the R. and F. children have been abandoned by their mother, respondent Rosa F. and (2) if the children have not been abandoned, whether custody should be awarded to their maternal grandmother, intervenor Martha F. or to their foster parents, intervenors Mr. & Mrs. C.
For the reasons discussed below, the court concludes that respondent has not abandoned the children. The abandonment petition is dismissed, and the matter is set down for a hearing on custody.
*15 This case had its genesis in February of 1977 when respondent voluntarily placed the children, Madeline, Jose, Daniel and Jeffrey, now 8, 7, 6, and 5 years old, respectively, into foster care with the Commissioner of Social Services, who in turn placed the children with Little Flower Children’s Services (petitioner/agency).
On February 23, 1977 the commissioner initiated neglect proceedings against respondent Rosa F. A finding of neglect was entered against her on August 29, 1977, and the children were placed with the commissioner for 18 months. After an extension of placement hearing on February 27, 1979, petitioner was directed to initiate proceedings to free the children for adoption. The agency initiated abandonment proceedings against the children’s putative father, Jose R., and his parental rights were terminated by an order dated May 12, 1980.
The instant proceeding was commenced by a petition dated and verified on October 1, 1980 and filed in the Kings County Family Court that same day.
On March 2, 1981, the maternal grandmother of the children filed an order to show cause in the New York County Family Court seeking guardianship and custody of the children. The maternal grandmother was also granted intervener status in the abandonment proceeding. On March 6, 1981 the abandonment proceeding was consolidated with the custody proceeding, and trial was scheduled for a later date in New York County Family Court. Finally, the foster parents, Mr. & Mrs. C., were granted intervenor status in the consolidated proceedings. The court directed that the abandonment proceeding be heard first, with resolution of the issue of custody to abide that determination.
At the abandonment hearing, it was established that during the six months prior to the filing of the petition, respondent had directly communicated with the agency only once after moving to Puerto Rico in January of 1978. She did so by a letter dated June 3, 1980 (respondent’s Exhibit B in evidence), responding to the May 22, 1980 letter sent to her by the agency caseworker. Her letter asked the caseworker to apprise her of the children’s well-being, and requested that the children be placed in-the care *16 of their maternal grandmother. Respondent had made a similar request in a letter dated August 7, 1979 in which she informed the caseworker that she was unable to care for the children but she had not abandoned the children, and asked that they be placed with their grandmother. In neither case did the agency deign to favor her with a reply.
In addition to these direct contacts with the agency, respondent indirectly communicated with the children by sending letters to her mother which on occasion contained money for the children’s support, on occasion contained presents for the children, and on another occasion contained a birthday card for Madeline. In addition, she spoke to her mother by telephone several times in August and September, 1980.
The maternal grandmother remained in extensive contact with the children during the six months prior to October, 1980, as she had been since February, 1977. She has visited regularly with the children including over-nightly, as frequently as the agency would permit and, indeed, sought increased visitation.
In the course of these visits, Mrs. F. passed on respondent’s sentiments of love, concern and devotion, and on occasion gave gifts from respondent to the children.
The agency has repeatedly refused the requests of respondent and intervenor grandmother to place the children in the care and custody of the grandmother, and has continued the children in foster care with the C’s from March of 1977 to the present.
Petitioner contends that respondent abandoned the children within the meaning of section 384-b of the Social Services Law in that she failed to visit and communicate with the children during the six-month period immediately prior to October 15, 1980, the date the petition was filed. Respondent asserts that her letter to the agency on June 3, 1980 was a communication with the agency during the six-month period in question, thus defeating the agency’s claim of abandonment. The agency concedes that respondent wrote a letter to the agency caseworker on June 3, 1980, but maintains that the letter amounted to an insubstantial communication with the children and, as such; is insufficient to preclude a finding of abandonment.
*17 This proceeding was brought pursuant to subdivision 5 of section 3844) of the Social Services Law which provides:
“(a) For the purposes of this section, a child is ‘abandoned’ by his parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed.
“(b) The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of the foregoing parental acts manifesting such intent, shall not preclude a determination that such parent has abandoned his or her child. In making such determination, the court shall not require a showing of diligent efforts, if any, by an authorized agency to encourage the parent to perform the acts specified in paragraph (a) of this subdivision.”
Petitioner claims that respondent’s conduct constitutes abandonment. It cites the statute’s use of the conjunction “and” for the proposition that the statute requires a parent to visit his or her children in addition to communicating with the children or agency during the relevant six-month period in order to avoid a finding of abandonment.
This position is untenable. The statute is not framed in terms of affirmative duties to visit and communicate. Rather, the statute contemplates a twofold dereliction of action on the part of a parent in order to bottom a finding of abandonment. A parent must have (1) failed to visit his or her children and (2) failed to communicate with the children or the agency during the relevant time period before abandonment can be found. Implicit in this language is the proposition that a parent who either visits the child or communicates with the child or agency during the six-month period before a petition is filed cannot be found to have abandoned the child.
In fact it has been held that even a single instance of parental communication with an agency during the relevant six-month period precludes a finding of abandonment under section 384-b. (Matter of Kent, 104 Misc 2d 196.) The *18 literal interpretation of the language of section 384-b upon which the Kent case was based, and the stringent test for abandonment which arises from such an interpretation is appropriate. Abandonment proceedings were unknown at common law (Matter of Anonymous, 40 NY2d 96, 101) and, as proceedings in derogation of common law, the statute which governs abandonment actions must be strictly construed. (McKinney’s Cons Laws of NY, Book 1, Statutes, §311.)
That the Legislature intended that a single instance of communication with an agency suffices to preclude a finding of abandonment under section 384-b of the Social Services Law is buttressed by the legislative history of the act. The predecessor to section 384-b was subdivision 6 of section 384, which section was added by section 3 of chapter 619 of the Laws of 1940. It was silent as to whether insubstantial or infrequent communications from a parent to an agency had any impact upon an abandonment proceeding. Section 384 was subsequently amended to provide that “insubstantial and infrequent contacts by a parent * * * shall not * * * be sufficient * * * to preclude a finding” of abandonment. (L 1975, ch 704, § 1.) Had section 384 remained in effect, petitioner could argue convincingly that the June 3, 1980 letter from respondent to the agency would not preclude a finding of abandonment.
However, subdivision 6 of section 384 was repealed by section 2 of chapter 666 of the Laws of 1976, and abandonment proceedings were subsumed under section 384-b, newly added by that same chapter. This section does not contain any reference to insubstantial communications.
An examination into the legislative history of section 384-b leads to the ineluctable conclusion that the Legislature deliberately omitted the language concerning insubstantial communications with respect to abandonment proceedings.
This conclusion is reinforced by reference to section 111 (subd 6, par [b]) of the Domestic Relations Law upon which petitioner mistakenly relies. Both sections were added to the statute books by chapter 666 of the Laws of 1976. While subdivision 6 of section 111 of the Domestic Relations Law explicitly provides that evidence of insubstantial commu *19 nieation shall not preclude a finding of abandonment, subdivision 5 of section 384-b of the Social Services Law is conspicuously silent in this regard.
The two situations were evaluated at the same time, and a different treatment was accorded to each one. There can be no possible conclusion drawn except that the Legislature recognized the two statutes covered distinctly different situations, and chose to make it more difficult to defend against an allegation of abandonment in adoption proceedings than an allegation of abandonment in termination proceedings.
The court rejects petitioner’s argument that indirect communication does not qualify as a communication with the children sufficient to preclude a finding of abandonment under the particular facts of this proceeding.
Petitioner rejected respondent’s request that petitioner furnish to her the address of the foster home where the children were staying. Its decision was reasonable, and based on sound social work principles. It then chose not to reply to respondent’s communications in May; 1979 and June, 1980. While these actions do not constitute a default in petitioner’s statutory duty not to prevent or discourage visitation or communication, most assuredly it made it more difficult for respondent to communicate with her children.
Respondent acted instinctively and resourcefully. She turned to her mother, and it was through Mrs. F. that the children had communication with respondent on numerous occasions between April and October, 1980. These took the form of relayed messages, presents, a photo of respondent and her new baby and a birthday card.
It. comes with ill grace for petitioner, who denied respondent direct access to the children, and then ignored her written entreaties, to complain of the method she employed to stay in communication.
We live in a time of augmented concern for the rights of a natural parent when the State seeks to sunder the parental relationship.
It is the policy of this State that the gravamen of abandonment must be rigorously demonstrated consistent with *20 its statutory criteria. (Matter of Dickson v Lascaris, 53 NY2d 204; Matter of Corey L v Martin L, 45 NY2d 383.) Under the recent holding of the United States Supreme Court in Santosky v Kramer (455 US 745), abandonment may no longer be established by a mere preponderance of the evidence, but by clear and convincing evidence. Petitioner has failed to meet its burden of proof.
Since the matter Has been decided on the basis of failure of proof on the statutory cause of action, the court declines to address the constitutional question raised by respondent and intervenor grandmother. (Matter of Dora P., 68 AD2d 719.)
Still to be resolved is the underlying custody dispute. A hearing will be held on the custody question in Part II, New York County Family Court, on January 12, 1983.