OPINION OF THE COURT
Simons, J.
Petitioner, the Monroe County Department of Social Services, brought this proceeding to terminate respondent’s parental rights to her child, Julius P., because she had abandoned him. It contends that respondent failed to visit or communicate with Julius or to communicate with *481 petitioner for a period of six months although able to do so and not prevented or discouraged from doing so by the petitioner (see Social Services Law, § 384-b, subd 5).
Family Court did not pass upon respondent’s conduct but dismissed the petition because petitioner had failed to assist respondent in maintaining contact with her child, a contractual obligation which the court found petitioner had assumed by the terms of a voluntary placement instrument executed by the parties. The Appellate Division reversed, holding that petitioner’s evidence “overwhelmingly” supported a finding that respondent had abandoned her child and that she had not overcome that evidence by testimony of her efforts to contact the agency or her son or of her inability to do so (see Matter of Ulysses T., 87 AD2d 998). It held that the voluntary placement instrument imposed no duty on petitioner greater than its statutory obligation toward respondent and her child.
The Social Services Law provides that a child is abandoned if the parent evinces an intent to forego her parental rights and obligations. Intent is manifested by the parents’ failure to visit the child or communicate with the child or the agency although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, the ability to visit or communicate is presumed (Social Services Law, § 384-b, subd 5, par [a]). The statute makes clear that the burden rests on the parent to maintain contact and that subjective good faith will not prevent a finding of abandonment (Social Services Law, § 384-b, subd 5, par [b]). Conversely, it provides that the agency has no obligation to exercise diligent efforts to encourage visits or communications between parent and child, but it may not prevent or discourage them (Social Services Law, § 384-b, subd 5, pars [a], [b]). In this respect, the duty imposed on the agency differs from that required by the statute before an agency may successfully urge termination of parental rights based upon a finding of permanent neglect (see Social Services Law, § 384-b, subd 7; see, also, Matter of Anonymous [St. Christopher’s Home], 40 NY2d 96, 102).
The evidence in the record comports with the Appellate Division’s finding that respondent had abandoned her *482 child and its determination on that issue should be sustained. That evidence established that Julius was born to respondent August 6, 1969. His father is unknown. From the time of his birth, respondent entrusted him to her mother who cared for him until she became ill in 1980. Respondent then executed a voluntary placement with petitioner which has been continued periodically by court order until the present time. After Julius was transferred to the agency, he was placed in a children’s home where he remained until July, 1981 when the agency placed him in a foster home. Respondent visited him in the children’s home sporadically and when the agency advised respondent in June or July of Julius’ pending transfer to a foster home, she expressed the wish that he be returned to her. There was some discussion about returning him and further appointments were arranged but respondent did not keep them. In August, 1981 petitioner’s caseworker visited respondent’s home on two separate occasions but was unable to find her. There were no further attempts to visit her after August but the agency did write. In September it sent a letter to respondent which was returned with a notation that she had moved. Petitioner eventually located respondent at a new address and in September it sent another letter to her there. It was not returned. Finally, on October 13, 1981 a certified letter was sent to respondent. She denies receiving it although a return receipt was executed by someone. Petitioner was unable to contact respondent from August, 1981 until February, 1982, when it instituted this proceeding, and respondent did not visit or communicate with her son or the agency during that period. Additionally, it should be noted that the court conducted a review proceeding in October, 1981 to continue the placement, as required by section 392 of the Social Services Law, and respondent failed to appear at that time. In opposition to this evidence, respondent offered only unpersuasive claims that she had tried unsuccessfully to reach her caseworker.
It remains to decide whether Family Court’s order should be reinstated because the placement instrument imposed a duty on petitioner to encourage contact between parent and child. Notwithstanding the explicit language of *483 the statute Family Court found petitioner assumed an additional duty when it executed the placement instrument and it held petitioner was compelled to establish that it had fulfilled that duty before the petition could be granted. The language of the instrument it relied upon provided: “(I) (we) have been advised of (my) (our) right to visit (my) (our) child and have been informed of the importance of visiting regularly. (I) (We) understand that visiting schedules may not always be definitely fixed, and that sometimes it may be necessary to change them because of changes in (my) (our) circumstances or situations in the foster family home or institutions in which (my) (our) child is placed, but we further understand that the agency is responsible for helping (me) (us) visit as frequently as possible. (I) (We) agree to cooperate with the agency in establishing appropriate visiting periods, which initially will be
It continued: “(I) (We) understand that none of the above provisions may be changed without (my) (our) consent or that of an individual acting in (my) (our) behalf with (my) (our) consent and the consent of the Commissioner of Social Services or an individual acting in his behalf with his consent. If any such provision is to be changed, it shall be so indicated in writing in a supplemental instrument which will be acknowledged and signed in the same manner as this agreement, and shall be attached to and become a part of the original agreement.”
The recitations of the placement instrument are consistent with the requirements of section 384-a of the Social Services Law which provides that surrender instruments shall contain certain information and advice to the parent and the advice shall be stated in laymen’s language. Thus, the statute provides that the instrument shall advise that the parent has the right of the supportive services of the agency, to visit the child and to have the child returned (Social Services Law, § 384-a, subd 2, par [c], cl [ii]). It also requires an admonition to the parents of their obligations to visit the child, to plan for his future, to consult with the agency, to contribute to the child’s support, to inform the agency of any change of name or address and that their failure to do these things may result in termination of their *484 parental rights (Social Services Law, § 384-a, subd 2, par [c], els [iii], [iv]). These provisions were added when section 384-a was amended in 1976 (L 1976, ch 669). The purpose of the amendment was to ensure that parents were fully advised of the help available to them when placing a child with an agency and to ensure that when they agreed to placement they knew their rights and duties toward their child (NY Legis Ann, 1976, pp 262-263). By requiring that the information be included in the placement instrument the Legislature intended that the parents be made aware of their responsibilities for the long-range planning of the child’s future at the time when their interest and motivation was highest. The language expresses the general statutory policy of fostering the parent-child relationship by means available to the agency but it does not impose an added duty upon it to encourage contact between parent and child. The scope of the agency’s duty is defined in subdivision 5 of section 384-b. That statute prohibits the agency from interfering with the parents’ attempts to visit or communicate with the child but it expressly states that diligent efforts need not be shown. In view of its language, the recitals in the placement instrument may not be construed by the courts to impose an obligation of diligent efforts or some intermediate level of conduct greater than that required by the statute (see Matter of Anonymous [St. Christopher’s Home], 40 NY2d 96, 102-103, supra; Matter of Malik M., 40 NY2d 840; Matter of Ulysses T., supra).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur.
Order affirmed, with costs.