*551 OPINION OF THE COURT
Bruce M. Kaplan, J.
Saint Dominic’s Home (petitioner herein) has moved to terminate the parental rights of Brenda Brown and Curtis Cumby with respect to twin children born to Ms. Brown on June 29, 1983.
In support of its request for a finding of permanent neglect petitioner has raised an issue of apparent first impression. Petitioner urged the court to hold applicable to a parent who did not know his children were in foster care with petitioner Social Services Law § 384-b (7) (e), which excuses an agency from making diligent efforts when the parent has failed for a period of six months to keep the agency apprised of his or her location.
The petitions which were filed in the court no earlier than January 22, 1987 are replete with infelicities. They alleged that Brenda Brown and Curtis Gumby [sic] permanently neglected the children, and that Curtis Gumby [sic] abandoned them in that for a period of six months prior to the filing of the petition he had no contact, communication or visitation with the infants, nor has there been any contribution made by him or anyone on his behalf toward the support of said infants. Paragraph 7 of each petition purporting to state an abandonment cause of action is notable for its failure to track the statute’s language. It omitted the words "or agency” following "communication or visitation with the infant.” These words are part of the statute as are the words "although able to do so and not prevented or discouraged from doing so by the agency.” (Social Services Law § 384-b [5] [a].) These omitted elements must be pleaded as well as clearly and convincingly proved.
The petitions each erroneously aver in paragraph 3 "That the birth certificate of said children contains the name of Curtis Gumbi, a/k/a Charles Gumbi, a/k/a Curtis Cumbie (hereinafter Curtis Gumby) as the alleged father of the child.” The birth certificates say nothing of the sort.
The testimony established that the parties had lived together briefly after the children were born, and that the father had visited once at the hospital. He was unsuccessful in making contact with Brenda Brown, also known as Brenda Hunter, also known as Brenda Giddens, until the summer of 1986. It was Ms. Brown who had severed the relationship by *552 decamping from Mr. Cumby’s home after appropriating his rent money.
On cross-examination former caseworker Briggs noted that the record contained Mr. Cumby’s name but misspelled or erroneously given as Gumbie or Gumby.[1] Her testimony also established that on or about August 27, 1986 Mr. Cumby contacted Saint Dominic’s after he unexpectedly encountered the respondent mother, who informed him that the children were in foster care.
Mr. Cumby’s call led to scheduling a meeting on September 3, 1986, at which he told the caseworker he was not certain if he were the children’s father.
Mr. Cumby’s uncertainty as to his paternity led to a discussion of him taking a blood test or providing a blood sample. He testified that when he attempted to obtain such a test at the hospital where he was employed he was told that this was not feasible. He also was rebuffed when he sought information about obtaining a blood test from the New York City Department of Health.
After September there was intermittent contact, because petitioner sent mail to Mr. Cumby at an incorrect address. The next contact with his family occurred on December 5, 1986 when a caseworker made phone contact with Mr. Cum-by’s mother.
On January 5, 1987, Mr. Cumby’s mother requested to see the children followed by a call from him on January 6, 1987. At that conversation Ms. Briggs spoke to him about acknowledging paternity and his obligation to plan for the children.
The only efforts petitioner made to locate Mr. Cumby were to make sporadic inquiries about him to Ms. Brown.
From the testimony of casework supervisor Heuer, it is clear that Ms. Brown was obstreperous, uncooperative, mendacious and in all manner unresponsive to addressing her serious problems.[2]
*553 However, even though Ms. Brown often denied knowledge of Mr. Cumby’s existence, petitioner had been given his name albeit as "Curtis Gumby” as early as August of 1983. The petitioner failed to demonstrate that it had undertaken anything other than cursory efforts to find him. The only diligent search claimed to have been undertaken to find him was done in the course of preparing this petition. However, no proof as to its particulars was presented. It was only in response to one of petitioner’s queries about him that Ms. Brown indicated that she would try and contact Mr. Cumby. When she found him, he came forward immediately, a point four months before the petition was filed.
There has been a failure to prove by clear and convincing evidence that Mr. Cumby abandoned his children. While many things may be said in criticism of his effectiveness in getting in contact with the agency much can be excused given the difficult nature of Ms. Brown.[3]
It is strikingly evident that Mr. Cumby and members of his family were in contact with the agency on a number of times in the six months prior to the petition’s filing on January 22, 1987. Doubtless there would have been more contact had petitioner directed correspondence to the correct address or made any attempt to determine whether the address it had was the correct one. This easily rectifiable error is all too typical of the manner in which petitioner proceeded with respect to Mr. Cumby. (This case is a decided exception to the high degree of professional competence and sensitivity that almost invariably typify petitioner’s performance of its responsibilities.)
At none of those occasions did Mr. Cumby express anything but some reasonable reservation as to whether he was the children’s father. While he volunteered to obtain a blood test, and failed in that undertaking, that is hardly the stuff of which an intent to forego parental responsibilities is made.
Petitioner has argued that this expression of ambivalence provides clear and convincing evidence that Mr. Cumby abandoned his children.
The court is not persuaded by this argument. It is one of *554 several raised points in petitioner’s well-written brief with which the court is not in agreement.
Petitioner urges the court to give a loose interpretation to the concept of abandonment. This position is rejected in light of the unequivocal teaching of the Court of Appeals in Matter of Corey L v Martin L (45 NY2d 383) and Matter of Dickson v Lascaris (53 NY2d 204), that classic abandonment principles should be construed strictly, and not be stretched. The court also adheres to the reasoning in its decision in Matter of Madeline R. (117 Misc 2d 14 [Fam Ct, NY County 1982]).
Petitioner fails to appreciate that while Social Services Law § 384-b (4) (b) makes reference to Domestic Relations Law § 111 for the definition of abandonment it does not incorporate Domestic Relations § 111 (6) (b)’s provisions respecting flicker of interest. This crucial distinction was commented on in Madeline R. (supra) and stands undisturbed by appellate authority. More importantly, the significance of Domestic Relations Law § 111 (6) (b) was central to the decision in Corey L (supra) and treated extensively in that case. The teachings of these cases are "wholly contrary to the position urged by petitioner and it is rejected. Accordingly, the cause of action for abandonment must be dismissed because it is clear that Mr. Cumby made several contacts with the agency in the six-month period preceding the filing of the petition, and in none of them did he evince an intent to forego his parental responsibilities.
We next turn to a consideration of whether the agency has shown by clear and convincing evidence that Curtis Cumby permanently neglected the children, because he failed to visit or plan for a period of one year.
Petitioner’s main thrust is that it was excused from making diligent efforts to further and strengthen the familial relationship between respondent and his children because respondent failed to comply with the requirements of Social Services Law § 384-b (7) (e). This section created an exception to the requirement of making diligent efforts when the parent has failed for a period of six months to keep the agency apprised of his or her location. The court rejects its applicability to this case.
Petitioner has cited no authority, nor has the court’s research disclosed any holding where Social Services Law § 384-b (7) (e) was found applicable to a case where the putative father had never been in contact with the agency.
*555 However, insight may be gleaned from Matter of Sheila G. (61 NY2d 368), where the Court of Appeals held that in termination proceedings the court must evaluate, as a threshold matter, whether the agency has exercised diligent efforts to encourage and strengthen parental relationships.
In Sheila G. (supra) extensive and favorable references were made to the Temporary State Commission on Child Welfare’s 1976 report. The report, entitled Barriers to the Freeing of Children for Adoption (hereinafter Report), recommended retention of the diligent efforts requirement. It further recommended an exception where the parent "has failed for a period of six months to keep the agency apprised of his or her location.” (Report, op. cit., at 25.) The Report noted: "This exception to the diligent effort requirement is intended to relieve the agency of any affirmative obligation to make a 'diligent search’ in order to locate missing parents, but if the agency otherwise knows (without a 'diligent search’) the parent’s location, the exception is not intended to apply. (See Page 105 below for the Commission’s administrative recommendations on the subject).” (Report, op. cit., at 25.)
Recommendation 2 states as follows: "2. Consonant with recommendations offered concerning matters of visitation (above), the role, rights and obligations of parents and agencies to work together to plan for the future of the child should be spelled out in the written agreement for placing a child in foster care, and read into the Court record at the '358-a’ judicial hearing. This written agreement should also inform the parent of his or her obligation to keep the agency apprised of the parent’s current address. Conversely, the agreement should also impose an obligation on the agency, when the parent visits or telephones the agency or one of its workers, to inquire as to the parent’s current address.” (Report, op. cit., at 105.)
It is clear from the context of the Report that the availability of this exception arises only when there has been an initial interface between the agency and the parent. This makes sense both in terms of form and substance. If a parent is obliged to keep the agency apprised of his or her current address, it assumes that there was a time when the parent and the agency were in contact in order for the parent initially to apprise the agency of his or her address.
This reading is consistent with the manner in which other courts have construed Social Services Law § 384-b (7) (e). Its *556 scope was thoroughly discussed in Matter of Antoinette Frances G. (135 Misc 2d 1034 [Fam Ct, NY County 1987]).
In that case the court held that in order to avail itself of the Social Services Law § 384-b (7) (e) exception an agency must not permit a substantial period of time to elapse between the time it became aware of the location of a parent who had previously failed to keep it apprised of his or her location and the commencing of a permanent neglect proceeding.
The opinion referred to three cases which found the agency excused from diligent efforts by virtue of Social Services Law § 384-b (7) (e).
In Matter of O. Children (128 AD2d 460 [1st Dept 1987]), which also involved petitioner, the father never gave an address and had to be contacted by the mother. However, he erratically came to the agency. Saint Dominic’s knew him, he knew Saint Dominic’s, and they were in contact with each other.
In Matter of Katina Valencia H. (119 AD2d 821 [2d Dept 1986]) the father had eight contacts with the agency between August 1985 and January 1987.
In Matter of Lee Ann N. (110 AD2d 979 [3d Dept 1985]) the agency was aware of the mother, and she was in contact with the agency.
On a more substantial note, if petitioner’s interpretation were accepted, there would be a chilling and unacceptable assault on parental rights wholly inconsistent with the zealously championed constitutional protections they are accorded.
Petitioner’s interpretation could result in a number of situar tions where a parent wholly lacking in fault could have his or her parental rights terminated. A father might not know that he had a child. A child might come into foster care through voluntary placement by, or child protective proceedings against, the custodial parent without knowledge of these facts by the noncustodial parent. Under petitioner’s interpretation the agency would have no obligation to make diligent efforts.
After two years of foster care an agency could file a petition pursuant to Social Services Law § 384-b, and a parent in that situation, through no fault of his or her own, could have his or her parental rights terminated. This result is not to be countenanced.
It is therefore concluded that Social Services Law § 384-b (7) (e) is inapplicable to situations where the agency has not been *557 in contact with a parent, and presents no proof that that parent knew that his or her child or children were in foster care with the agency.
In this regard it should be noted that the petitioner never located Curtis Cumby through the exercise of diligent efforts. He sought out petitioner and he did so as a result of the only efforts the petitioner made to find the putative father which was occasionally to query Brenda Brown. Although she generally was not cooperative, she came in contact with Mr. Cumby whether by chance or by design, and he immediately communicated with petitioner.
Since the children were neither abandoned, nor did the agency make diligent efforts to further and encourage the familial relationship, the proceeding must be dismissed against Curtis Cumby.

. This error was perpetuated by the misspelling of his name in the petition even after the agency had reason to know his correct name and its spelling.

. It was for this reason that the court rendered an oral decision that the agency had made diligent efforts to help her overcome her drug dependency, lack of an adequate and stable place to live and lack of finance. She never addressed those problems and their resolution was central to her planning for the children’s return. As a result she had permanently neglected the children. Her inability to respond to diligent efforts to help her resolve these *553 same problems had led to the termination of parental rights of other children.

. Her lack of cooperation frustrated the conducting of court-ordered blood-grouping tests to ascertain whether, in fact, Mr. Cumby was the children’s father.