■ In the Matter of CHRISTOPHER D. Mix, Respondent, v ALICIA GRAY, Appellant. [696 NYS2d 308] —Cardona, P. J. Appeal from an order of the Family Court of Tompkins County (Barrett, J.), entered July 27, 1998, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for visitation with the parties' child.

In 1988, when he was 26 years of age, petitioner had a sexual relationship with the then-16-year-old respondent. The parties resided together in North Carolina but separated in March 1989 after respondent informed petitioner that she was pregnant. Petitioner drove respondent to Pennsylvania and, after visiting his parents in New York, returned to North Carolina. Shortly thereafter, respondent traveled to New York and began living in the Town of Enfield, Tompkins County. She gave birth to a boy in November 1989.

According to petitioner, he was informed that the child had died shortly after birth. In 1995, however, respondent contacted him and offered him the opportunity to meet the child. Petitioner's subsequent attempts to visit the child were unsuc-

cessful. In 1997, respondent commenced a proceeding to establish paternity and, upon his default, petitioner was adjudicated the father. An order of support was subsequently entered against him. Thereafter, petitioner commenced this proceeding for visitation with the child and, following a hearing, Family Court granted the petition resulting in this appeal by respondent.

Initially, it is well settled that the standard to be applied in determining issues of visitation is the best interest of the child (*see, Matter of Rogowski v Rogowski*, 251 AD2d 827), which is paramount (*see, Eschbach v Eschbach*, 56 NY2d 167, 171; *Matter of Brown v Dilone*, 258 AD2d 650). "Deference is traditionally given to the factual findings made by Family Court since it is accorded the unique opportunity to assess the credibility of the witnesses before it * * * These findings will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (*Matter of Cline v Cline*, 229 AD2d 671, 672).

In the case at hand, petitioner testified that after the parties separated but prior to the birth of the child, he visited respondent where she was living in New York and also sent her a money order. He stated that, a few months after the child's birth, he returned to visit respondent but was advised by friends of respondent that the child had died and respondent had moved. Petitioner testified that he did not have any further contact with respondent until 1995 when she contacted him to see if he wanted to meet his son. Petitioner expressed a desire to do so. He related that he traveled to respondent's residence with his mother on three separate occasions, but she was never home and, consequently, he never saw the child. Petitioner's mother corroborated that testimony. In addition, petitioner stated that he had straightened out his life and stopped using alcohol. He indicated that he has a stable relationship with his fiancée and much to offer his son, including the closeness of a large family with many siblings. Petitioner's fiancée testified that petitioner was an excellent stepfather to her own children.

Respondent testified that petitioner had no contact with her after the parties separated until 1995 when she called him to inquire whether he wanted to meet his son. According to respondent, petitioner did not show up on time for the scheduled meeting. She stated that he did not call or attempt to reschedule. She acknowledged, however, that petitioner did not contest that he was the biological father of the child in the paternity proceeding and also indicated a willingness to pay child support.

We do not agree with respondent's contention that visitation should be precluded because petitioner abandoned the child. Abandonment contemplates "conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights—a withholding of interest, presence, affection, care and support" (*Matter of Corey L. v Martin L.*, 45 NY2d 383, 391; *see, Matter of Randi Q.*, 214 AD2d 784, 785). Considering the evidence establishing that petitioner was misinformed of the child's death and his attempts to initiate contact after learning that the child was alive, we do not find abandonment.

On the other hand, there is a paucity of evidence in this record supporting Family Court's determination that visitation is in the best interest of this child. Significantly, there is no evidence indicating what effect visitation will have on this young boy who has had absolutely no contact with his father since birth. Under such circumstances, we have noted that "it may be appropriate to award visitation that is initially restrictive but gradually increasing" (*Matter of Stewart v Stewart*, 222 AD2d 895, 896). Moreover, here the court simply directed the parties to "settle upon a schedule of visitation" without sufficient examination of the child's emotional state or possibly the need for preparational therapy (*see*, Family Ct Act § 251; *Matter of Thaxton v Morro*, 222 AD2d 955, 958; *McMahon v Thompson*, 68 AD2d 68, *lv dismissed* 48 NY2d 603).

Furthermore, although not determinative (*see, Matter of Nicotera v Nicotera*, 222 AD2d 892, 894), there should have been some inquiry concerning the nine-year-old child's preferences. The customary means available to garner information about a child, such as a court-ordered psychological evaluation, an in camera interview or the receipt of a recommendation from the Law Guardian, were not utilized in this proceeding. While it may be true that the Law Guardian failed to present evidence or request the use of any of those means to place the child's desires, needs or concerns before Family Court, that does not alter the fact that this record is insufficient to determine what is in this child's best interest irrespective of the presumption favoring visitation by a natural parent. Because we cannot say that there is a sound and substantial basis in the record for Family Court's best interest determination (*see, Matter of Nicotera v Nicotera, supra*, at 893), we remit the matter for a hearing limited to that issue.

Crew III, Spain, Graffeo and Mugglin, JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Tompkins County for a

fact-finding hearing limited to a determination of whether visitation is in the child's best interest.