■ In the Matter of BRITTNI K., an Infant. DAWN K., Respondent; COMMISSIONER OF THE ADMINISTRATION FOR CHILDREN'S SERVICES OF THE CITY OF NEW YORK, Respondent. NILDA S., Respondent; DAWN K., Respondent. [746 NYS2d 290]

Brittni's law guardian brings this appeal which followed a five-day combined hearing on the Family Court Act article 6 and article 10 petitions before a court-appointed attorney-referee between January 10 and February 11, 2002. The court followed the referee's recommendation and denied Nilda S.'s custody petition, and ordered that Brittni be returned to Dawn K., her mother.

This appeal raises the issue of whether the Family Court erred in its ruling that Brittni's best interests lie with an award of custody to her mother, after she had lived in Nilda's care for approximately two thirds of her life.

In 1991, when Brittni was three months old, her mother, Dawn, who is the respondent in both proceedings, voluntarily placed her in the care of Nilda, a family friend. Brittni remained with Nilda until age six. Nevertheless, Dawn visited her, took care of all her medical needs, and tried to get her

own life to the point where she could take back her daughter. After having physical custody of Brittni for almost six years, Nilda voluntarily returned Brittni to her mother without incident after a two-month transition period. Indeed, at that time, Nilda made no claim that Brittni should remain with her.

Brittni lived with her mother and two brothers for the next three years, yet maintaining a close relationship with Nilda. In 1999, ACS filed a neglect petition against Brittni's mother, who subsequently admitted leaving two of her children, including Brittni, with her sister and the children's father, despite knowing they were substance abusers. When Brittni and her two brothers were removed, they were placed with Nilda as a nonkinship resource. Since the neglect proceeding was commenced, the relationship between Nilda and Brittni's mother seriously deteriorated, and during the pendency of the neglect proceeding, Nilda petitioned the court for custody of Brittni.

On appeal, ACS does not challenge the Family Court's finding that Nilda met her threshold burden under *Matter of Bennett v Jeffreys* (40 NY2d 543). Even given this concession, the threshold determination that extraordinary circumstances exist "is only the beginning, not the end, of judicial inquiry" (*id.* at 548). Indeed, the law "explicitly require[s] the courts to base custody decisions solely upon the best interest of the child" (*id.* at 547).

On appeal, the law guardian primarily seeks an order reversing the Family Court and allowing custody to remain with Nilda. He argues that, notwithstanding the finding of extraordinary circumstances, because Brittni has formed a significant attachment to Nilda, the Family Court incorrectly determined that Brittni's best interests are served by returning her to her mother. In the alternative, the law guardian asks for a new hearing, because the court refused to assign counsel for Nilda.

ACS, on the other hand, supports Dawn's request for Brittni's return to her because: (1) she has complied with all ACS referrals; (2) she has cooperated with family therapy; (3) ACS sees no need for future referrals, even though it urges that family therapy be continued and that ACS supervise the new custody arrangement for 12 months within an article 10 disposition. Moreover, ACS further supports a return to the mother based on its claims that Nilda has engaged in an intentional campaign to alienate Brittni from her mother and she has shown flaccid or no support for fostering Brittni's relationship with her mother.

A hearing court's determination "is entitled to great defer-

ence because it has the best vantage point for evaluating the credibility of the witnesses" (*Matter of White*, 118 AD2d 336, 342). However, this deference has limits. A hearing court's determination "will not be set aside unless it lacks a sound and substantial evidentiary basis" (*Corsell v Corsell*, 101 AD2d 766, 767). Based on our independent review of the record, we find no basis to set aside the hearing court's determinations. The record clearly supports the hearing court's finding that Nilda has failed to meet her burden of proving that Brittni's best interests would be served by remaining in her care. Nilda's obstructive and uncooperative behavior is clearly adverse to Brittni's best interests and Dawn has demonstrated that she is now fully capable and prepared to care appropriately for Brittni.

Indeed, all the parties agree that it would be in Brittni's best interests to maintain a relationship with her mother even if custody were awarded to Nilda. The record abundantly demonstrates that Brittni's mother is genuinely concerned that her daughter maintain a relationship with Nilda, understanding its importance for Brittni regardless of the custody petition's outcome.

In contrast, Nilda appears only willing to support that relationship because the court would expect it were she awarded custody. The record is also clear that Nilda has repeatedly and consistently interfered with and thwarted Brittni's relationship with her mother. Moreover, despite Nilda's self-serving claim that she would allow visitation to continue between Brittni and her mother if she were awarded custody, there is no reason to believe that Nilda would actively encourage and foster a healthy mother-daughter relationship.

Nilda's past behavior proves that: she has scheduled activities to conflict with the mother's visitation; she forced Brittni to choose between her maternal grandfather's birthday party and her own; she has left future visitation with Dawn up to Brittni herself; and she refuses to allow Dawn to come to visit Brittni in her apartment. Further, Nilda admitted she was not concerned that her own relationship with Brittni's mother was not good, a statement which we believe speaks volumes about her ability and willingness to foster and encourage a relationship between mother and daughter.

While the law guardian's position is that Nilda had a "strong relationship with the child for most of her life and there is a potential for adverse psychiatric consequences of a change in custody," we cannot overlook the evidence which clearly supports the Family Court's finding that Nilda has thwarted and

interfered with efforts to reestablish a positive and functioning mother-daughter relationship. We note that in matrimonial cases, it is beyond cavil that "[i]nterference with the relationship between a child and a noncustodial parent by the custodial parent is an act so inconsistent with the best interests of the child that it raises, by itself, a strong probability that the offending party is unfit to act as a custodial parent" (*Matter of Gago v Acevedo*, 214 AD2d 565, 566, *lv denied* 86 NY2d 706; *accord, Victor L. v Darlene L.*, 251 AD2d 178, 179, *lv denied* 92 NY2d 816; *see also, Entwistle v Entwistle*, 61 AD2d 380, 384-385, *appeal dismissed* 44 NY2d 851). We cannot, under these circumstances, support a transfer of custody that will likely inhibit and do great harm to a continued mother-daughter relationship, something all the parties agree is in Brittni's best interests. Rather than encourage a healthy mother-daughter bond, Nilda's proven indifference and antagonism will more likely alienate Brittni even further from her mother.

Moreover, we agree with the Family Court's finding that Nilda is "excessively possessive" of Brittni and that she "has made some truly questionable decisions about her social development and education." Further supported by the record is the Family Court's finding that Nilda exhibits a "near obsession with Brittni's dance activities[,] and her desire to be with the child at all times is emblematic of her enmeshment with the child and helps explain her efforts to sabotage the child's relationship with her mother."

Notwithstanding the benefits of good health, self-esteem, self-confidence, and feelings of accomplishment generated by these activities, Brittni has a more than arduous after-school curriculum, even by today's standards, for an 11-year-old girl. On Mondays, Brittni has individual therapy followed by two dance classes. During the 90 minutes between classes, Brittni must do her homework in a car. On Tuesdays, she has family therapy followed by gymnastics. On Wednesdays, she has jazz and, on Thursdays, ballet. Nilda explained that since Brittni gets home so late during the week, she does her homework in the car riding to and from her activities. Friday, Brittni's only free night, is now occupied with tutoring, as Brittni's many extracurricular activities have taken their toll on her academic performance over the last two semesters. On weekends, Brittni often participates in dance competitions.

In stark contrast to Nilda's inability to perceive and appreciate the negative academic consequences of such a heavy and hectic after-school schedule, Dawn urges that a plan be implemented which will improve Brittni's grades and yet continue some reasonable amount of extracurricular activities.

All parties agree that it is in Brittni's best interests to continue with therapy. However, Nilda has declared that her own individual therapy was a waste of time, and she has not actively encouraged Brittni to continue her own therapy. In fact, she told the family therapist that, if Brittni did not want to go to therapy, there was nothing she could do about it. Brittni's mother, on the other hand, has willingly participated in family therapy and sees it as necessary for Brittni to cope with and gain insight into her difficult situation. Nilda gives us no substantial reason to believe that she would continue her own individual therapy, be an active and willing participant in family therapy, or encourage Brittni to continue hers.

As for the law guardian's alternate argument for a new hearing, he has no standing to raise the issue of counsel on behalf of Nilda. Indeed, it is fundamental that issues may be raised in a proceeding only by an aggrieved party (*see*, CPLR 5511; *Levin v Yeshiva Univ.*, 96 NY2d 484, 496; *Raven El. Corp. v City of New York*, 291 AD2d 355). Even assuming standing, the law guardian did not object at the hearing when the court denied Nilda's request for counsel. Thus, the law guardian has not preserved the issue for appellate review (*see*, CPLR 5501 [a] [3]). Finally, the law guardian failed to raise before the Family Court the additional unsupported claim, raised for the first time on appeal, that *Brittni* was denied *her* constitutional right to have custody determined in her best interests by virtue of the court's failure to appoint counsel for *Nilda*.

Since Nilda did not file a notice of appeal, we do not reach the various issues she raises in her brief (*see*, CPLR 5501 [a]; *Hecht v City of New York*, 60 NY2d 57, 61). Were Nilda a proper party to raise, affirmatively, issues on appeal, we would find that the Family Court did not deprive her of counsel. Indeed, assuming Nilda met the threshold requirement of financial eligibility, she is not a person enumerated as one statutorily entitled to counsel (*see*, Family Ct Act § 262). Rather, the appointment of counsel was discretionary (*see*, Family Ct Act § 262 [b]). In any event, the court did not improvidently exercise its discretion by not appointing her counsel. During the pendency of the proceedings, Nilda's attorney sent a letter to the court advising that her office no longer represented Nilda, who had decided to proceed pro se. Thereafter, Nilda requested that the court assign counsel, but did not bring the required financial proof to determine her eligibility. The court allowed a short adjournment for Nilda to bring in supporting financial documentation, but she did not provide it in a timely fashion. The court was unwilling to delay the case any further,

especially since Nilda was not statutorily entitled to counsel. However, the court did acknowledge that Nilda should be included in any conference and it allowed her to ask questions and call witnesses. Finally, during the course of the hearing, it was brought to the court's attention, in connection with a collateral matter, that Nilda cared for other children in her home. The court therefore did not believe she had been forthcoming about her income, and this development underscores the propriety of its discretionary ruling denying the appointment of counsel.

Were we to consider the several remaining issues which Nilda improperly attempts to raise in her brief, we would find them unpreserved, lacking merit, and/or belied by the record. Notably, the law guardian has not seen fit to raise any of these remaining issues on this appeal.

We remand solely for the Family Court to issue an order implementing a gradual and efficient transfer of custody from Nilda to the child's mother, and providing for visitation with Nilda even after the full transfer of custody has been effected. Concur—Nardelli, J.P., Andrias, Friedman, Marlow and Gonzalez, JJ.