In the Matter of ANNETTE B. ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOSEPH B., Appellant. [769 NYS2d 587]—

In a proceeding pursuant to Social Services Law § 384-b to terminate the father's parental rights on the ground of abandonment, the father appeals from an order of fact-finding and disposition of the Family Court, Orange County (Klein, J.), dated December 27, 2001, which, after fact-finding and dispositional hearings, terminated his parental rights on the ground of abandonment and transferred custody and guardianship of the subject child to the petitioner Orange County of Social Services for the purpose of adoption.

Ordered that the order of fact-finding and disposition is affirmed, without costs or disbursements.

The petitioner Orange County Department of Social Services (hereinafter DSS) commenced this proceeding pursuant to Social Services Law § 384-b to terminate the appellant father's parental rights to his daughter Annette B. on the ground of

abandonment. Contrary to the father's contention on appeal, DSS proved by clear and convincing evidence that he abandoned the child (*see* Social Services Law § 384-b [5] [b]; *Matter of Julius P.,* 63 NY2d 477 [1984]; *Matter of Lee P.,* 304 AD2d 760 [2003]).

At the hearing, DSS presented evidence, inter alia, that the petitioner had not visited or communicated with the subject child or the DSS for the six-month period immediately prior to the filing of the petition, although he was able to do so and had not been prevented or discouraged from doing so by the agency (*see* Social Services Law § 384-b [5] [a]; *Matter of Alexa Ray R.,* 276 AD2d 703 [2000]). Indeed, the father, who testified on his own behalf, admitted to a lack of any contact with the child since 1996, when he was incarcerated on drug charges (*see Matter of Malik M.,* 40 NY2d 840 [1976]). Rather, he merely asserted that good cause existed for such a failure, i.e., the child and her mother had moved from their former address (*see Matter of Ronald D., Jr.,* 282 AD2d 533 [2001]). However, by the father's own testimony, his efforts to locate the child were limited to an inquiry with the maternal grandmother (the time of the inquiry was not clear from his testimony) as to the location of the child's mother, which the maternal grandmother asserted that she did not know; and a request to his own mother (again, the time of the inquiry was not clear from his testimony) that she make inquiries with the Department of Social Services on Long Island (the location of the child's last known address); those inquiries proved fruitless apparently due to confidentiality issues (*cf. Matter of Andre W.,* 298 AD2d 206 [2002] [contact with child must be by parent, not grandparent, to rebut finding of abandonment]). The father did not testify as to any follow-up to these inquiries by himself or anyone else, or as to any additional inquiries. Indeed, he admitted that he did not attempt to contact the child during the months that passed between the service of the petition and the hearing. Even crediting this testimony, we find the father's sporadic and minimal efforts to locate the child insufficient to rebut a finding of abandonment (*see Matter of Tyeisha Harriett S.,* 293 AD2d 417 [2002]; *Matter of Kerry J.,* 288 AD2d 221 [2001]; *Matter of Alexa Ray R., supra; Matter of Michelle S.,* 234 AD2d 800 [1996]; *Matter of Christine S.,* 203 AD2d 367 [1994]; *Matter of Crystal C.,* 219 AD2d 601 [1995]).

The Law Guardian's remaining contentions either are not properly before this Court or are without merit (*see Matter of Brittni K.,* 297 AD2d 236 [2002]). Ritter, J.P., H. Miller and Townes, JJ., concur.

Friedmann, J., dissents and votes to reverse the order appealed from, on the facts, and to dismiss the petition, with the following memorandum: I respectfully dissent and vote to reverse the order appealed from and dismiss the petition to terminate the father's parental rights based upon abandonment.

The child who is the subject of this proceeding, Annette B., was born on August 22, 1991. Until sometime in 1996 she lived with her mother in Suffolk County. Although the mother and the appellant father never married, the father, who also lived in Suffolk County, testified that he visited his daughter every weekend. Sometime in 1996, the father was convicted of a felony and sent to prison. While he was in prison, the mother and daughter moved from Suffolk County to Orange County, without telling the father or, apparently, anyone else related to him.

In June 1998 the daughter was placed in the custody of the Orange County Department of Social Services (hereinafter DSS). The father was never informed of this placement. In or about June 2001 the mother executed a judicial surrender of her parental rights, which was approved by the Family Court, Orange County, without notice to the father. Thereafter, in or about August 2001, DSS commenced this proceeding against the father, who was still in prison, to terminate his parental rights based on abandonment. After a hearing, the Family Court granted the petition.

In order to establish abandonment, DSS was required to prove by clear and convincing evidence (*see Matter of Lee P.,* 304 AD2d 760 [2003]; *Matter of Messiah Quwan D.,* 288 AD2d 383 [2001]; *Matter of Joryi N.,* 281 AD2d 548 [2001]) that, in the six-month period immediately prior to the filing of the petition, the father "evince[d] an intent to forego his . . . parental rights and obligations as manifested by his . . . failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; *see Matter of Julius P.,* 63 NY2d 477, 481 [1984]). I recognize that DSS was not required to show that it made diligent efforts to encourage the father to visit or communicate with his daughter in order to establish abandonment (*see* Social Services Law § 384-b [5] [b]; *Matter of Malik M.,* 40 NY2d 840 [1976]; *Matter of Tony Reyes W.,* 266 AD2d 222 [1999]), and that a parent's incarceration ordinarily does not prevent him or her from maintaining contact with a child (*see Matter of Kerry J.,* 288 AD2d 221 [2001]; *Matter of Commissioner of Social Servs. of City of N.Y. [Elizabeth M.] v Juanita Yvette M.,* 208 AD2d 921 [1994]; *Matter of Derrick*

*J.,* 287 AD2d 503 [2001]; *Matter of I.R.,* 153 AD2d 559 [1989]). But, DSS "may not prevent or discourage" such visitation or communication (*Matter of Julius P., supra* at 481), and "the statute which governs abandonment actions must be strictly construed" (*Matter of Madeline R.,* 117 Misc 2d 14, 18 [1982]; *see Matter of Brown,* 139 Misc 2d 550, 554 [1988]).

Under the facts of this particular case, I conclude that DSS failed to prove by clear and convincing evidence that the father abandoned his daughter (*see Matter of Xena X.,* 279 AD2d 691, 692 [2001]; *Matter of Lisa AA,* 83 AD2d 702 [1981]; *Matter of Brown, supra; see also Matter of Madeline S.,* 3 AD3d 13 [2003]; *cf. Matter of Kerry J., supra*), and further failed to prove by the same standard that it did not prevent or discourage the father from contacting his daughter. The evidence at the termination hearing demonstrated that after the father was incarcerated, the mother moved with the daughter from their home in Suffolk County to Orange County without informing the father. The father unsuccessfully attempted to locate the child upon learning that the mother had moved. He had no reason to suspect that DSS had custody of the child, especially in Orange County, a county with which the family had no prior relationship. And, despite knowing of his existence and location, DSS apparently made no attempt to contact the father to inform him that it had placed his daughter in foster care in June 1998. Nor did it inform him of any court proceedings involving his daughter between 1998 and 2001 (*see Matter of Xena X., supra; Matter of Lisa AA, supra; Matter of Mix v Gray,* 265 AD2d 692, 693-694 [1999]). In summary, despite the fact that it was required to provide him with notice of a proceeding filed against the mother, DSS did not notify him (*see* Family Ct Act § 1035 [d]; Social Services Law § 384-c).

Family Court Act § 1035 (d) plainly provides that "where only one of the child's parents is the respondent" in a proceeding to determine abuse or neglect, "service of the summons and petition shall also be ordered on the child's other parent." The other parent must also be served with a notice of pendency advising him or her, inter alia, "of the right to appear and participate in the proceeding as an interested party intervenor for the purpose of seeking temporary and permanent custody of the child . . . and in all phases of dispositional proceedings" (Family Ct Act § 1035 [d]). At no point was the father in this case served with the summons and petition against the mother, which would have notified him that his daughter was in the custody of Orange County DSS. It should also be noted that the Legislature recently amended Family Court Act § 1035 (d),

requiring the notice of pendency to provide greater information with respect the rights of nonrespondent parents and grandparents to seek custody (L 2003, ch 526).

My colleagues in the majority "find that the father's sporadic and minimal efforts to locate the child" (at 722) after his incarceration were insufficient to rebut a finding of abandonment. But, as a practical matter, there was little else he could do. As indicated above, and by the majority, the child's maternal grandmother either could not or would not help the father locate the mother, and the Department of Social Services on Long Island would not assist the paternal grandmother. Nothing in the record suggests that the father had been alerted to the fact that the mother had relocated to Orange County, or even that his daughter was in the custody of DSS. Yet, according to the majority, somehow the father was supposed to have tracked down his daughter to maintain contact with her. In my opinion, the failure of DSS to notify the father that his daughter was in foster care violated the requirements of the Family Court Act and effectively prevented him from communicating with her in the six-month period immediately prior to the filing of the abandonment petition against him.