In the Matter of JEREMIAH KWIMEA T. PIUS XII YOUTH & FAMILY SERVICES, Respondent; JEREMIAH T., SR., et al., Appellants. [781 NYS2d 784]—

In a proceeding pursuant to Social Services Law § 384-b to terminate parental rights on the ground of abandonment, the parents separately appeal from (1) a fact-finding order of the Family Court, Queens County (Hunt, J.), dated August 5, 2002, which, after a hearing, found that the parents had abandoned the child, and (2) an order of disposition of the same court also dated August 5, 2002, which, upon the fact-finding order, and after a dispositional hearing, terminated their parental rights

on the ground of abandonment and transferred custody and guardianship of their child jointly to the petitioner Pius XII Youth & Family Services, and the Commissioner of Social Services of the City of New York for the purpose of adoption.

Ordered that the appeal from the fact-finding order is dismissed, without costs or disbursements, as that order was superseded by the order of disposition; and it is further,

Ordered that the order of disposition is affirmed, without costs or disbursements.

An intent to abandon a child "is manifested by the parents' failure to visit the child or communicate with the child or the agency although able to do so and not prevented or discouraged from doing so by the agency" (*Matter of Julius P.*, 63 NY2d 477, 481 [1984]; *see* Social Services Law § 384-b [5] [a]; *Matter of Annette B.*, 2 AD3d 721 [2003]). Contrary to the parents' contentions, it was established by clear and convincing evidence that they abandoned the child in the six-month period preceding the filing of the petition (*see Matter of Julius P., supra; Matter of Lovell Raeshawn McC.*, 308 AD2d 589 [2003]). Minimal, sporadic, or insubstantial contacts are insufficient to overcome a finding of abandonment (*see Matter of Annette B., supra; Matter of Kerry J.*, 288 AD2d 221 [2001]). The agency caseworker testified that there were no visits between the parents and the child during the relevant period. Although the foster mother initially testified that there had been no visits, upon further questioning, she recalled there were several visits. However, she was uncertain as to the number. She admittedly kept no records and conceded that she might be mistaken. Notably, neither parent came forward to testify that they had visited with the child. The Family Court reasonably credited the agency caseworker's testimony over that of the foster mother. In any event, a few visits would have been insufficient to overcome the overall intent to abandon manifested by the parents (*id.*). It was uncontroverted that the parents did not contact the agency, nor had they sent any cards, letters, or gifts to the child. Moreover, they did not call the child or inquire of him on the telephone.

The evidence elicited at the dispositional hearing established by a preponderance of the evidence that it was in the child's best interests that parental rights be terminated and that he be freed for adoption (*see Matter of Lovell Raeshawn McC., supra; Matter of Tenisha Tishonda T.*, 302 AD2d 534 [2003]). The child was doing exceptionally well and related well to his siblings, who resided in the same kinship foster/adoptive home. He had developed significant bonds with the foster mother, who had cared for him continuously since birth. The parents, on the

other hand, had not overcome their long-standing drug abuse problems and had not even begun to come to terms with their drug abuse, as evidenced by their failure to enroll in any drug treatment program. Luciano, J.P., Mastro, Spolzino and Skelos, JJ., concur.