Matter of J'Adore (2020 NY Slip Op 06788)





Matter of J'Adore


2020 NY Slip Op 06788


Decided on November 18, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 18, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
JEFFREY A. COHEN
HECTOR D. LASALLE, JJ.


2019-03864
 (Docket No. A-15778-16)

[*1]In the Matter of J'Adore. Everald E. (Anonymous), et al., petitioners- respondents; Devon F. (Anonymous), respondent-appellant.


Jill M. Zuccardy, New York, NY, for respondent-appellant.
Greenberg & Merola, LLP, Baldwin, NY (Hayley Greenberg of counsel), for petitioners-respondents.
Ronna L. DeLoe, Larchmont, NY, attorney for the child.



DECISION & ORDER
In a proceeding pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Queens County (Dweynie E. Paul, J.), dated January 15, 2019. The order, after a fact-finding hearing, found that the father's consent to the adoption of the subject child was not required and that the father, in effect, abandoned the child.
ORDERED that the order is affirmed, without costs or disbursements.
The subject child was born in May of 2009. The child's mother died shortly after giving birth. In August 2016, the child's maternal grandparents (hereinafter the grandparents) commenced an adoption proceeding pursuant to Family Court Act article 6. The child had resided with the grandparents nearly her entire life, an arrangement agreed to by the child's father. The father, after appearing in this proceeding, refused to consent to the adoption, prompting a hearing to decide whether the father's consent was necessary pursuant to Domestic Relations Law § 111(1)(d), or, alternatively, whether he had abandoned the child pursuant to Social Security Law § 384-b. Following a fact-finding hearing, the Family Court determined that the father's consent to the adoption was not necessary, and that the father, in effect, abandoned the child. The father appeals.
"A biological father's consent to adopt a child over six months old who was born out of wedlock is required only if the father 'maintained substantial and continuous or repeated contact with the child as manifested by' (1) payment of reasonable child support and (2) either (a) monthly visitation or (b) 'regular communication' with the subject child[ ] or custodian" (Matter of Mikai R. [Ralph R.], 166 AD3d 624, 624, quoting Domestic Relations Law § 111[1][d]; see Matter of D. [Juan P.-Darren M.], 164 AD3d 1237, 1237). "Domestic Relations Law § 111(1)(d) imposes a dual requirement upon the biological father, and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoptions is not required" (Matter of Mikai R. [Ralph R.], 166 AD3d at 624; see Matter of Janelle C. [Sean R.], 88 [*2]AD3d 787, 787).
Based upon the credible evidence in the record, we agree with the Family Court's determination that the father did not maintain substantial and continuous or repeated contact with the child, or the grandparents (see Matter of Ramal M., Jr. [Ramal M.], 172 AD3d 1067, 1069; Matter of Mikai R. [Ralph R.], 166 AD3d at 624). While the father testified that he made some efforts to support the child, and to communicate and arrange for visits with the child and the grandparents, this testimony was vague and uncorroborated (see Matter of Aliyah S.P. [William L.], 163 AD3d 969, 969; Matter of Sharissa G., 51 AD3d 1019, 1020). In addition, the father's testimony was contradicted by the grandparents, who testified that the father made no financial contributions, made no effort to visit the child after 2010, and made no effort to communicate with them. The court credited the grandparents' testimony and found that the father's testimony was largely incredible. "'Great deference is given to the Family Court's credibility determinations, as it is in the best position to assess the credibility of the witnesses having had the opportunity to view the witnesses, hear the testimony, and observe their demeanor'" (Matter of Ava A. [Steven A.], 179 AD3d 666, 669, quoting Matter of Oliver A. [Oguis A.-D.], 167 AD3d 867, 868). Here, the court's credibility determinations, including those rejecting the father's claims that the grandparents prevented or discouraged him from supporting, visiting, or communicating with the child or the grandparents, were supported by the record and will not be disturbed on appeal (see Matter of Aliyah S.P. [William L.], 163 AD3d at 969). Moreover, even crediting the father's testimony, his purported attempts to provide support and communicate were insignificant, and failed to meet his burden of satisfying the requirements of Domestic Relations Law § 111(1)(d) (see Matter of Seasia D., 10 NY3d 879, 881; Matter of Jayquan J. [Clint J.], 77 AD3d 947, 948).
Accordingly, we agree with the Family Court's determination that the father's consent to the adoption of the child was not required.
We also agree with the Family Court's determination that the father, in effect, abandoned the child within the meaning of Social Services Law § 384-b. To demonstrate that the father abandoned the child, the grandparents were required to establish, by clear and convincing evidence, that the father "evince[d] an intent to forego his . . . parental rights and obligations" by failing to visit the child or communicate with them or the child during the six-month period before the petition was filed (Social Services Law § 384-b[5][a]; see Social Services Law § 384-b[4][b]; Matter of Mikai R. [Ralph R.], 166 AD3d at 625; Matter of Andrea B., 66 AD3d 770, 770-771). The grandparents met this burden by testifying that the father failed to make any attempt to visit the child, or to communicate with them or the child, since the father's visit with the child in 2010. In response, the father vaguely and equivocally described sporadic and minimal efforts to communicate with the grandparents and the child in the years subsequent to his 2010 visit, which failed to overcome the overall intent to abandon manifested by the father (see Matter of Jayquan J. [Clint J.], 77 AD3d at 948; Matter of Jeremiah Kwimea T., 10 AD3d 691, 692).
The father's remaining contention is without merit.
SCHEINKMAN, P.J., BALKIN, COHEN and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court