OPINION OF THE COURT
David Freundlich, J.
In this proceeding commenced pursuant to Social Services Law § 384-b, the petitioner, Suffolk County Department of *513 Social Services, seeks an order of this court committing the guardianship and custody of a child, Olivia Doe, date of birth January 6, 2001, to the Commissioner for purposes of adoption. The gravamen of the allegations in the petition verified on July 9, 2001 is that the infant, who came into the care and custody of the Department of Social Services on the day of her birth, has been abandoned within the meaning of Social Services Law § 384-b (4) (b).
The circumstances surrounding the placement of the infant into the care and custody of the Commissioner on January 6, 2001 are unique and noteworthy. The distinguishing factor of this case is that the abandonment is not merely predicated on the failure to maintain contact with the child or agency, but more significantly on the parent’s affirmative step in placing the newborn child at a designated “safe haven” site. According to the papers and proof in this proceeding, the mother of the infant took her to Huntington Hospital several hours after the birth (which ostensibly occurred in the mother’s home) and left the infant with Huntington Hospital staff in accord with a local County program established under the “Abandoned Infant Protection Act.” This recent legislation, which became law on May 15, 2000 (L 2000, ch 156), was enacted in response to parental abandonment of a newborn child in places which may result in the injury or even death of the child.
Specifically this Act adds and/or amends certain provisions of the Social Services Law and the Penal Law with respect to the effect of parental desertion of unwanted children. In relevant part, it “de-criminalizes” the otherwise criminal act of abandonment of a child under certain circumstances, to wit:
“with the intent that the child be safe from physical injury and cared for in an appropriate manner, the defendant left the child with an appropriate person or in a suitable location and promptly notified an appropriate person of the child’s location” (Penal Law § 260.03 [eff July 18, 2000]).
In accord with the Abandoned Infant Protection Act, and consistent with the mandate set forth in Social Services Law § 372-g, Suffolk County Department of Social Services developed a program designed to facilitate the safe and orderly placement of newborns by parents who otherwise would have been inclined to place their infants in peril by dangerous physical desertion. The County created several “safe havens,” in *514 partnership with local hospitals, whereby a parent could deliver an unwanted newborn to a designated site, in anonymous fashion, without threat of reprisal or criminal prosecution. Huntington Hospital is one of those designated “safe havens,” and it is there that the mother of this newborn went several hours after the child’s birth. The newborn was physically turned over to hospital staff, who, in turn, placed the child with the Department of Social Services as a destitute or dependent child.
Although the Abandoned Infant Protection Act is obviously designed to facilitate the safe placement of unwanted infants for purposes of adoption, it creates no new procedural methods for adoption, nor does it by-pass any of the consent requirements of the Domestic Relations Law. Thus, the Department of Social Services was relegated to a “normal” termination of parental rights proceeding under Social Services Law § 384-b, which, in this case, could only be predicated upon abandonment. Accordingly, after the newborn was left in the safe haven and a period of six months had passed, the instant proceeding was filed, albeit in order to legally free the child for adoption.
As the identity and whereabouts of the mother were unknown, and with absolutely no specific information about the putative father of the child, notice of the proceeding was given via publication to “Jane Doe,” and an inquest was conducted on the scheduled return date (Sept. 4, 2001).
The evidence adduced at the inquest consisted of the testimony of Eileen Hall, the caseworker for the Department of Child Protective Services assigned to the child, and two documents: an anonymous letter from the mother of the child dated January 9, 2001 and the affidavit of publication. In the letter, the mother acknowledges the birth of the child and her intention “to give the child up” explaining that such decision was reached after much thought and love.
Ms. Hall testified that the child, Olivia Doe, was taken into custody of the Department of Social Services as a destitute child at approximately 4:00 p.m. on January 6, 2001 after the mother gave birth to her at home and brought her to the designated safe haven site, Huntington Hospital. The child has remained in custody continually since the date of placement.
Although the parent was never prevented or discouraged from communicating and visiting with the child, the only further contact by the mother occurred on January 9, 2001 when the mother sent the agency the aforesaid anonymous letter *515 explaining her decision to give the child up. No other contact has been made to visit or provide for the child.
It is well established that the Department of Social Services need not use diligent efforts to strengthen the parental relationship with the child where the cause of action to terminate parental rights is based upon abandonment (Matter of John T., 260 AD2d 642 [2d Dept 1999]). A child is deemed abandoned by the parent when the parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency although able to do so and not prevented or discouraged from doing so by the agency. (Social Services Law § 384-b [5] [a].) The statute further provides that the ability to communicate or visit is presumed unless there is evidence to the contrary (see, Matter of Julius P., 63 NY2d 477 [1984]). The burden rests on the parent to maintain contact.
Under the facts of this case the presumption of abandonment is founded based upon the fact that the mother placed her newborn child at a designated safe haven site and has failed to contact the child or agency during the six-month period after termination proceedings were instituted. The mother has never paid child support, visited the child or in any way contributed to the welfare of the child during this six-month period. Based upon clear and convincing evidence, the court finds that the child, Olivia Doe, is an abandoned child as defined by Social Services Law § 384-b (5) (a).
With respect to disposition, the court further finds that the child is doing well in her current placement. The child has been residing with the same preadoptive family who indicates its wish to adopt her. As a result, the child’s best interest would be served by terminating the parental rights and freeing the child for adoption.
Accordingly, it is hereby ordered that the parental rights of Jeme Doe and John Doe as to Olivia Doe are terminated. It is further ordered that Olivia Doe is placed in the guardianship and custody of the Department of Social Services for the purpose of adoption.