OPINION OF THE COURT
Marybeth S. Richroath, J.
Background
On November 10, 2010 the Administration for Children’s Services (ACS) filed a neglect action against the mother of a child abandoned pursuant to the terms of the Abandoned Infant Protection Act.* **§During that proceeding it was established that on October 26, 2010, Timothy Jaccard, Director of the Nassau County Police Department’s Baby Safe Haven Program, a task force set up to respond to calls for aid from mothers intending to abandon an infant in accord with New York’s Abandoned Infant Protection Act, met the mother of Baby Girl Hope on a street corner in Westchester County, in accord with her directions given to him by telephone. Though the mother had indicated on the telephone that she wished to talk about invoking “Baby Safe Haven,” once Mr. Jaccard met her, he determined that she was about to give birth, and he brought her to the hospital. The hospital to which he transported her was in Nassau County. Later the same day, a healthy baby girl was born. She was given the name “Baby Girl Hope” at the hospital.
During the car ride, as well as during several visits to her at the hospital, Mr. Jaccard attempted to ascertain the mother’s name, address, telephone number, name of the father of the child, his contact information, the name of any relatives or friends who might have interest in the birth of the child. The mother refused to provide any information at all and Mr. Jaccard gave her the pseudonym “Destiny Hope.” According to Mr. Jaccard, the mother insisted that she wanted to invoke her right to abandon her infant under the “Baby Safe Haven” law. *224 According to Mr. Jaccard, and the information provided to the court by ACS during the neglect proceeding, the mother also refused to provide any identification or contact information to hospital personnel. Shortly after the birth of the child, the mother left the hospital. Mr. Jaccard drove her back to the street corner where he had picked her up. He gave her his card which contained his contact information. When he testified at the neglect fact-finding hearing in June 2011, he had not had any further contact with her.
After the agency conducted a diligent search and was unable to secure any identification information as to either the child’s mother or father, this court ordered service by publication on the neglect docket. Service was accomplished by publication in the New York Post on four separate dates, May 10, 2011, May 17, 2011, May 24, 2011 and May 31, 2011. After publication, neither Mr. Jaccard nor anyone from ACS or the court was contacted by either parent of the child.
The court conducted a fact-finding at inquest on the neglect docket on June 21, 2011 and made a finding that respondent mother had abandoned the subject child and therefore neglected her. On June 28, 2011, the court held a dispositional hearing, also at inquest, and placed the child in the care of the Commissioner. On the same date, the court held a permanency hearing, found that the child was a child less than one year of age who had been in care for more than six months, that the agency had conducted a diligent search and failed to ascertain the parents of the child, and therefore ordered a change in goal to adoption and directed that the agency file a termination of parental rights proceeding within 30 days.
The Current Application
On July 8, 2011, the agency filed a termination of parental rights proceeding pursuant to Social Services Law § 384-b, on the ground of abandonment. At the return of service date, on August 31, 2011, the agency requested that the court “dispense with service” under the Abandoned Infant Protection Act (also known as “Baby Safe Haven”) because the mother by her actions has made it clear that it is her intention to abandon the child. The court requested that the agency make the motion in writing. The agency complied. The child’s attorney joins in the motion.
Decision
The court notes, initially, that other than citing to the general terms of the “Baby Safe Haven” legislation, counsel for the *225 agency does not cite any specific authority for his request. In the first reported case to address a termination of parental rights proceeding of a child abandoned under the terms of “Baby Safe Haven,” J. Freundlich noted, “[although the Abandoned Infant Protection Act is obviously designed to facilitate the safe placement of unwanted infants for purposes of adoption, it creates no new procedural methods for adoption, nor does it bypass any of the consent requirements of the Domestic Relations Law.” (Matter of Doe, 189 Misc 2d 512, 514 [Fam Ct, Suffolk County 2001].) In like manner, this court has reviewed the relevant statutory framework and does not find authority to “dispense” with service.
Termination of parental rights proceedings are civil proceedings, and are statutory in nature. Thus they must be strictly construed and fully complied with (Matter of Mia T. [Emilio T.], 88 AD3d 730 [2d Dept 2011]; Matter of Jacob, 86 NY2d 651 [1995]; People ex rel. Lawton v Snell, 216 NY 527 [1916]). The Family Court has subject matter jurisdiction over termination proceedings brought upon a cause of action in abandonment. (Social Services Law § 384-b [3] [d].) However, in order to establish jurisdiction over the individual against whom a termination proceeding is prosecuted, in personam jurisdiction must also be secured. (CPLR 301.)
The Social Services Law specifically addresses the mechanism for securing personal jurisdiction in an abandonment proceeding: “[a] proceeding [to terminate a parent’s parental rights] is originated by a petition on notice served upon the child’s parent or parents, the attorney for the child’s parent or parents and upon such other persons as the court in its discretion may prescribe.” (Social Services Law § 384-b [3] [e].) The provisions governing the terms of service in a termination proceeding originated in Family Court are covered in the Family Court Act. (Family Ct Act § 617.) Family Court Act § 617 makes clear that there is no discretion to dispense with service: “Service of a summons and petition under this part shall be made by delivery of a true copy thereof to the person summoned.” (Family Ct Act § 617 [a] [emphasis added].) Where after a diligent search it is clear that the whereabouts of the party cannot be ascertained, service by publication is authorized, but it is also mandated: “[s]ervice of the summons and other process with a notice as specified herein by publication shall be made in accordance with the provisions of CPLR 316, provided, however, that a single publication ... in only one newspaper designated in the *226 order shall be sufficient.” (Family Ct Act § 617 [d] [emphasis added].)
The Abandoned Infant Protection Act, originally enacted into law in 2000, was amended in 2005 and 2010. Neither of those amendments in any way changed the procedural requirements for termination of parental rights proceedings brought after a child has been safely abandoned under the terms of that legislation.
A failure to secure in personam jurisdiction over proper parties to litigation could fatally flaw any judgment or order resulting from that litigation, as it is well established that before a parent’s rights to the care, custody, and companionship of children could be cut off, a court must have in personam jurisdiction over the parent. (Armstrong v Manzo, 380 US 545 [1965]; Matter of Qadeera Tonezia D., 55 AD3d 606 [2d Dept 2008].) In Armstrong the Court was quite direct: “[A]s to the basic requirement of notice itself there can be no doubt, where, as here, the result of the judicial proceeding was permanently to deprive a legitimate parent of all that parenthood implies.” (Armstrong v Manzo, 380 US at 550.) In a case as serious as one to terminate a parent’s rights and free a child for adoption, it would be irresponsible for a court to leave an open question as to a court’s jurisdiction to issue its orders.
The agency’s motion to dispense with service is denied. Service by publication in accord with Family Court Act § 617 is ordered.

 Based upon a number of tragic deaths of infants discovered shortly after birth in trash containers and other inappropriate and dangerous places, on July 18, 2000, the New York State Legislature passed and Governor Pataki signed into law the Abandoned Infant Protection Act. The legislation was designed to encourage parents, who for whatever reason were going to abandon their infant, to do so safely to a responsible adult. It promised a parent anonymity in return for thus assuring the infant’s safety. Thus, the Penal Law sections which criminalized abandonment or endangering the welfare of a child were amended to provide a defense based upon the safe abandonment of a baby at an appropriate location or to a responsible adult. (Penal Law § 260.00 [2]; § 260.10 [3].)